IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CHRISTIAN B. CHAPMAN,** | : |
| Plaintiff, | : |
| v. | : Civil Case No.: 1:17-cv-3719-SAG |
| **MINA MANUHEHRI,** | : |
| Defendant. | : |

## MEMORANDUM OPINION

Following an auto-pedestrian accident, Plaintiff Christian B. Chapman filed this lawsuit against Defendant Mina Manuhehri, alleging negligence. ECF 4. A two-day jury trial concluded on May 21, 2019, with the jury finding in favor of Plaintiff and awarding $3,000 in non-economic damages. ECF 106, 112, 113. Presently pending is Plaintiff's Motion for a New Trial Pursuant to Federal Rule of Civil Procedure 59. ECF 119. Defendant opposed the Motion, ECF 122, and Plaintiff filed a Reply, ECF 131. No hearing is necessary to resolve the motion. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, I shall deny Plaintiff's Motion.

### I. BACKGROUND

This case arises from an auto-pedestrian accident on February 8, 2017 in Montgomery Village, Maryland, where Defendant's vehicle struck Plaintiff, a pedestrian. ECF 4. On November 28, 2018, Defendant admitted that she was negligent and that her negligence was the sole cause of the accident. ECF 66. The case proceeded to trial on the issue of damages only. *Id.* The procedural background of this case and the majority of the factual background from the *Daubert* hearing were illuminated in this Court's *Daubert* Opinion, and they are incorporated here by reference. ECF 118 at 2-9.

At the outset of the *Daubert* hearing, the Court communicated to Plaintiff's counsel that, after reviewing the submissions by Dr. Garzillo, its main concern about his qualification as an expert in this case was his methodology. ECF 127 at 24 ("The Court: Based on my review of the evidence, you're free to put forth whatever evidence you want, but the Court's primary concern is the methodology and reliability of the methodology, so that you can focus your attention on those issues."). The Court also reiterated this concern throughout the hearing. ECF 127 at 41 ("The Court: We have a limited amount of time here. I asked that the hearing focus on the methodology that was used which is my main concern."), 57 ("The Court: … We've been at this for about an hour, and we haven't really gotten to the methodology yet."), 59-60 ("The Court: Counsel, I want to let you make your record in this case. The difficulty that we have is we have the jury coming back; we do need to give the court reporter something of a break. The issue that I have found problematic in this case is the connection between his finding of moderate pain, which I understand the basis for, and the dollar amount that he put on the potential damages. That is the methodology aspect that I'm concerned about.").[1]

After several hours of testimony from Dr. Garzillo, the Court issued its ruling from the bench, excluding Dr. Garzillo's testimony in its entirety. *Id.* at 76-79. On June 4, 2019, the Court issued a Memorandum Opinion, further explaining the basis for its ruling. ECF 118. In its Opinion, the Court explained that Dr. Garzillo's opinions fell short of the requirements of Federal Rule of Evidence 702 and the *Daubert* standard for three reasons: (1) Dr. Garzillo's testimony that he used a different pain assessment method than the one used in the study providing his exclusive

---

[1] Plaintiff misrepresents the record in his Motion when he states, "the Court admonished Gladys L. Christopherson to 'be quiet and move on as there is not enough time for the whole, … and if I had more time I would like to hold the entire hearing.'" ECF 119-1 at 10. The transcript does not reflect any such statement by the Court. *See* ECF 127.

basis for calculating Plaintiff's future medical expenses; (2) the lack of reliable indicators in the study used by Dr. Garzillo to calculate Plaintiff's future medical expenses; and (3) Dr. Garzillo's failure to examine Plaintiff in person. *Id.* at 10-11.

After the *Daubert* hearing, Defendant raised the issue of causation of Plaintiff's injuries and the accident, arguing that, without expert testimony, Plaintiff would not have sufficient evidence to connect the injuries to the accident. ECF 127 at 80. The Court disagreed, stating that "the causation is relatively clear in terms of the incident and injury, so I'm going to deny the motion as to causation." *Id.* On the second day of trial, the Court reiterated its ruling, and placed its reasoning on the record, relying on *Wilhelm v. State Traffic Safety Comm'n*, 230 Md. 91, 185 A.2d 715 (1962), stating "expert testimony on causation is not required where the injury develops coincidentally with or within a reasonable time after the negligent act … [a]nd in this case there seems to be a fairly straightforward causal link between the injury and the accident, so I don't believe expert testimony is required." ECF 128 at 2.

At trial, Plaintiff called three witnesses, Alexander Brower, Scott Chapman, and Plaintiff. *See* ECF 127 (Trial Transcript Day 1), 128 (Trial Transcript Day 2). Brower witnessed the accident, and testified that he was talking to Plaintiff in front of Brower's house when a vehicle that was pulling into a parking space suddenly sped up and came towards Plaintiff and Brower. ECF 127 at 98. Brower testified that he "[didn't] really remember what [he] did when that vehicle came towards [them]," and that "initially [he] did not know what happened to [Plaintiff]," but that Brower had a "better angle" to see the car coming towards them than Plaintiff did. *Id.* at 100-101. Although Brower did not see Plaintiff "get hit by the vehicle," he saw him in between a bush and Brower's house. *Id.* at 102-103. After Plaintiff was struck, Brower took several photographs of the accident, and after about a half an hour or more, he watched the emergency personnel load

3

Plaintiff into the ambulance and take him away. *Id.* at 101-108. The parties stipulated to the admission of the photographs taken by Brower of the accident scene. *Id.* at 14-15; ECF 128 at 82-83. The photographs showed Defendant's car in contact with Brower's house, detail of the damage to the interior and exterior of Brower's house, and the bushes in front of Brower's house. *Id.* at 102-111. The photographs did not show Plaintiff or his injuries. *Id.*

Scott Chapman, Plaintiff's father, testified about seeing Plaintiff in the hospital, "complaining about how much pain was in his leg," and about Plaintiff's recovery at his parents' home, where he "mostly stays in his room…[and] doesn't go out very much and be socialized." *Id.* at 114-120. He testified that Plaintiff was "a lot more active" before the accident. *Id.* at 114. Scott Chapman also testified about taking Plaintiff to all of his doctors' appointments and physical therapy. *Id.* at 117-119. He explained that he took his son to three follow-up appointments with Dr. Gluck, who said that Plaintiff's fracture had resolved, four or five physical therapy appointments, and several appointments with another orthopedic surgeon, Dr. Arnold. *Id.* at 126-133. He also stated that Plaintiff has walked with a "swaying back and forth limp" since the accident, and that Plaintiff complains about his left knee pain "just about every night he [gets] home from work." *Id.* at 120-124.

Finally, Plaintiff testified about his memory of the accident, the fracture of his left tibial plateau, his continuing pain, his work history, and his daily activities. ECF 127 at 138-189; ECF 128 at 24-82. To illustrate his complaints of pain, Plaintiff referred to a pain diary he kept from the date of the accident until May 8, 2019. ECF 127 at 177-181. The pain diary, admitted as an exhibit, provided a scale from zero to ten for Plaintiff to record his level of pain each day. *Id.* at 179-180. Plaintiff testified that he experienced pain "every day all day" when he takes steps. *Id.* at 183. Plaintiff referred to his cell phone's health application that automatically tracked his steps

each day, and stated that he took "a lot more" steps before the accident. *Id.* at 183-189. Plaintiff also testified that he does not take any prescription medication, Motrin, Advil, Tylenol, or other over-the-counter medication for the pain in his leg. ECF 128 at 62-63, 71 ("A: I have taken Motrin in the past, but it was not for my leg -- I have taken Motrin, Tylenol, ibuprofen, but it was not for my leg.").

After Plaintiff rested his case, Defendant did not call any witnesses and rested her case. ECF 128 at 83-84. The trial concluded on May 21, 2019, with the jury finding in favor of Plaintiff and awarding $3,000 in non-economic damages. ECF 106, 112, 113; ECF 128 at 129-131.

## II.　　LEGAL STANDARD

Federal Rule of Civil Procedure 59(a)(1)(A) provides, "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—…after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." The decision of whether to grant a new trial "rests within the sound discretion of the trial court but such discretion must not be arbitrarily exercised." *City of Richmond v. Atl. Co.*, 273 F.2d 902, 916 (4th Cir. 1960). "On a Rule 59 motion, the district court must 'set aside the verdict and grant a new trial[] if … (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict..'" *Knussman v. Maryland*, 272 F.2d 625, 639 (4th Cir. 2001) (quoting *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)). And, "jury determinations of factual matters such as … the amount of compensatory damages will be reviewed by determining whether the jury's verdict is against the weight of the evidence or based on evidence which is false." *Atlas Food Sys.*, 99 F.3d at 594.

These first two prongs require a "comparison of the factual record and the verdict to determine their compatibility." *Id.*

### III. ANALYSIS

In seeking a new trial, Plaintiff makes several arguments in his Motion and Reply, the majority of which focus on pre-trial proceedings. *See* ECF 119-1, 131. Arguments raised for the first time in a reply brief should generally not be considered without allowing the opposing party an opportunity to respond. *See Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 512 n.8 (D. Md. 2009). However, the Court will consider all of Plaintiff's arguments, because the Court finds no merit to the arguments.

#### A. Pretrial Conference and Settlement Conference

Plaintiff raises concern with the cancellation of the December 6, 2018 settlement conference and with the Court's Pretrial Conference, which was not recorded. As to the settlement conference, Plaintiff contends that ECF 68 is in error, because Plaintiff's counsel did not request to cancel the scheduled settlement conference. ECF 68 is a Paperless Order, signed by the United States Magistrate to whom the case was referred for settlement, stating "[a]t the request of counsel, the settlement conference scheduled for December 6, 2018 is cancelled." *See* ECF 68; ECF 54 (Order referring case to United States Magistrate Judge A. David Copperthite for settlement). However, ECF 68 accurately reflects that the parties agreed to cancel the settlement conference. The email exchange between the parties regarding the settlement conference reflects that Plaintiff's counsel stated, "[i]n light of your client's position we will agree to cancel Thursday's conference. Thank you for letting us know and saving the trip to Baltimore." *See* ECF 122-1.

Plaintiff also argues that this Court erred when it stated in its *Daubert* Opinion that "counsel first provided the Court with a copy of Dr. Garzillo's March 9, 2018 Report" and underlying

6

documents following the Pretrial Conference. *See* ECF 119-1 at 22. Plaintiff maintains that it provided these documents "on November 26, 2018, days prior to the Court Ordered Settlement Conference that had been scheduled for December 6, 2018," and consequently that "[f]or approximately six months, the Court … had knowledge of Plaintiff's named expert witness, Dr. Garzillo, along with the qualifications as an expert witness, record of prior testimony in the Courts, the substance of his proferred testimony and the basis for his opinions." *Id.* at 22-23. Plaintiff conflates the referral of this case to *this* Court "for all proceedings and the entry of judgment," with the referral to another United States Magistrate Judge "for settlement or other ADR conference." *See* ECF 54. The expert documents Plaintiff provided for settlement were not provided to this Court, but were submitted to Judge Copperthite for settlement purposes, pursuant to his June 27, 2018 Letter Order. *See* ECF 55 (Judge Copperthite's Letter Order providing, "[n]o later than Monday, November 26, 2018, I would like to receive … a short ex parte letter, not to exceed five pages, from each party…"). Settlement conferences are confidential in nature, and documents submitted for settlement purposes are not docketed and must not be viewed by the presiding judge. Local Rule 607.5 (D. Md. 2018) ("The Court's ADR process is confidential. Unless otherwise agreed by the parties and the Court, no disclosure shall be made to anyone, including the judicial officer to whom the case is assigned, of any dispute resolution communication that in any aspect reveals the dispute resolution positions of the parties or advice or opinions of neutrals. No such communication shall be admissible in any subsequent proceeding except as permitted by the Federal Rules of Evidence."). Thus, providing the expert report to Judge Copperthite for settlement purposes did not permit this Court to access or review it.

Finally, Plaintiff argues that when this Court did not record the pretrial conference, it violated Maryland Rule 2-541, which provides "[a]ll proceedings before a magistrate shall be

recorded either stenographically or by an electronic recording device." ECF 131 at 2-5; *see* Md. Rule 2-541(d)(3) (West 2019).  However, this procedural rule does not apply in this case, because a federal court sitting in diversity jurisdiction applies *federal* procedural law and the substantive law of the state in which the proceeding is brought.  *See, e.g.*, *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 851 (4th Cir. 2016); *see also Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); 19 WRIGHT & MILLER, FED. PRAC. & PROC. § 4501 (3d ed.).  Contrary to Plaintiff's belief, there is no requirement, in either the Federal Rules of Civil Procedure or the Local Rules of this Court, that a pretrial conference be recorded.  *See* Fed. R. Civ. P. 16; Local Rule 106.6 (D. Md. 2018).

### B. Timing of Defendant's Objections

Plaintiff contends that the Court's allowance of Defendant's pretrial submissions on May 8, 2019, and the subsequent *Daubert* hearing, were an abuse of discretion warranting a new trial. ECF 119-1 at 20; ECF 131 at 13-14.  This Court previously addressed the timeliness of Defendant's submissions in its *Daubert* Opinion, where it stated, "Defendant timely objected to Dr. Garzillo's testimony in her May 8, 2019 Motion in Limine, ECF 83, pursuant to the Court's scheduling order … Accordingly, the Court exercised its gatekeeping function to review Dr. Garzillo's testimony under Rule 702, which 'like other determinations of admissibility of evidence, requires the trial judge to exercise an informed and broad discretion.'" ECF 118 at 10-11 n.6 (internal citations omitted).  Federal Rule 26(b) provides, "[u]nless the court orders otherwise, these disclosures must be made at least 30 days before trial."  In this case, the Court did order otherwise, and gave Defendant until May 8, 2019 to file her pretrial disclosures. ECF 80. Moreover, at the Emergency Hearing on Plaintiff's Motion to Disqualify this Court, Judge Russell

found "that the defendant did preserve through a Motion in Limine filed prior to the pretrial conference, a challenge to the qualifications of the individual plaintiff's expert." ECF 130 at 19-20 (Judge Russell Hearing Transcript).

### C. Exclusion of Dr. Garzillo and *Daubert* Hearing

Plaintiff argues that a new trial is warranted because the Court abused its discretion when it excluded Dr. Garzillo after conducting a *Daubert* hearing. Plaintiff contends that the Court erred in its analysis of Dr. Garzillo's qualifications as an expert under Federal Rule of Evidence 702 and the *Daubert* standard because this Court "fail[ed] to articulate and apply any of [the] five *Daubert* factors," and did "not identify which portion of [its] ruling was based upon Federal Rule of Evidence 702." ECF 119-1 at 14.

Plaintiff's argument is plainly refuted by this Court's ruling from the bench and its *Daubert* Opinion. *See* ECF 127 at 76-79; ECF 118. At trial, the Court stated, "looking at the requirements of Rule 702, the area where I believe his testimony falls short is not his technical or specialized knowledge … The problem I have is whether the testimony is the product of reliable principles and methods." ECF 127 at 76-77. Subsequently, the Court issued a sixteen-page opinion, expounding upon the three bases for its exclusion of Dr. Garzillo's testimony. ECF 118. First, the Court found that "Dr. Garzillo's method to assess Plaintiff's pain for the purpose of calculating his future medical costs lack[ed] objective, independent validation." *Id.* at 11-12. Second, the Court explained that "the NIH study Dr. Garzillo used to calculate Plaintiff's future expenses was not intended to be a tool for calculating any particular patient's future medical costs." *Id.* at 12-13. Finally, the Court stated that "Dr. Garzillo's failure to physically examine Plaintiff before writing his report reveal[ed] the lack of sufficient facts or data for his opinions, particularly in light of the other evidence reviewed by Dr. Garzillo and presented at the hearing." *Id.* at 13-16. This

9

found "that the defendant did preserve through a Motion in Limine filed prior to the pretrial conference, a challenge to the qualifications of the individual plaintiff's expert." ECF 130 at 19-20 (Judge Russell Hearing Transcript).

### C. Exclusion of Dr. Garzillo and *Daubert* Hearing

Plaintiff argues that a new trial is warranted because the Court abused its discretion when it excluded Dr. Garzillo after conducting a *Daubert* hearing. Plaintiff contends that the Court erred in its analysis of Dr. Garzillo's qualifications as an expert under Federal Rule of Evidence 702 and the *Daubert* standard because this Court "fail[ed] to articulate and apply any of [the] five *Daubert* factors," and did "not identify which portion of [its] ruling was based upon Federal Rule of Evidence 702." ECF 119-1 at 14.

Plaintiff's argument is plainly refuted by this Court's ruling from the bench and its *Daubert* Opinion. *See* ECF 127 at 76-79; ECF 118. At trial, the Court stated, "looking at the requirements of Rule 702, the area where I believe his testimony falls short is not his technical or specialized knowledge … The problem I have is whether the testimony is the product of reliable principles and methods." ECF 127 at 76-77. Subsequently, the Court issued a sixteen-page opinion, expounding upon the three bases for its exclusion of Dr. Garzillo's testimony. ECF 118. First, the Court found that "Dr. Garzillo's method to assess Plaintiff's pain for the purpose of calculating his future medical costs lack[ed] objective, independent validation." *Id.* at 11-12. Second, the Court explained that "the NIH study Dr. Garzillo used to calculate Plaintiff's future expenses was not intended to be a tool for calculating any particular patient's future medical costs." *Id.* at 12-13. Finally, the Court stated that "Dr. Garzillo's failure to physically examine Plaintiff before writing his report reveal[ed] the lack of sufficient facts or data for his opinions, particularly in light of the other evidence reviewed by Dr. Garzillo and presented at the hearing." *Id.* at 13-16. This

Court clearly articulated the bases for excluding Dr. Garzillo based on Rule 702 and the *Daubert* standard, and such exclusion does not warrant a new trial.

In addition, Plaintiff's statement that the Court did not allow Plaintiff to proffer evidence at the *Daubert* hearing is simply incorrect. *See* ECF 131 at 10-13. The Court considered all of the documents Plaintiff submitted on behalf of Dr. Garzillo. ECF 127 at 23 ("[Plaintiff's counsel]: …We have, in fact, printed out for the Court all 17 of those submissions so we have a judge's copy. … The Court: So I have reviewed those, but I'm happy to have a hard copy for use during the hearing."). After reviewing all of the evidence, chief among the Court's concern was Dr. Garzillo's methodology, as the Court repeatedly communicated to Plaintiff's counsel before and throughout the *Daubert* hearing. ECF 88 at 2 ("the Court has grave concerns about the methodology Garzillo used to determine Plaintiff's future medical expenses"); ECF 97; ECF 127 at 24 ("The Court: Based on my review of the evidence, you're free to put forth whatever evidence you want, but the Court's primary concern is the methodology and reliability of the methodology, so that you can focus your attention on those issues."), 41, 57, 60, 76-77. The Court's additional concern with the most efficient use of everyone's time at the *Daubert* hearing, including Plaintiff's, was well in keeping with the promotion of efficient judicial administration and the Court's gatekeeping role. *See* Fed. R. Civ. P. 16(c)(2)(O)-(P) ("At any pretrial conference, the court may consider and take appropriate action on the following matters: … establishing a reasonable time limit on the time allowed to present evidence; and facilitating in other ways the just, speedy, and inexpensive disposition of the action."); Fed. R. Evid. 102 ("These rules should be construed as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination."); *Tenecyk v. Omni Shoreham Hotel*, 365 F.3d 1139, 1155-56 (D.C. Cir. 2004)

(finding "no indication that the District Court abused its discretion to manage the trial proceedings" when it had "competing demands" on its time); *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001) ("The gatekeeping function, like other determinations of admissibility of evidence, requires the trial judge to exercise an informed and broad discretion.").

### D. Exclusion of Plaintiff's Past Medical Expenses

The Court properly excluded Plaintiff's past medical expenses because Plaintiff did not have a witness who could testify as to their reasonableness. *See Kujawa v. Baltimore Transit Co.*, 224 Md. 195, 208, 167 A.2d 96 (1961) ("Evidence of the amount or payment of medical bills does not establish the reasonable value of the services for which the bills were rendered or justify recovery therefor."). In excluding the evidence at trial, the Court explained, "[t]he *Kujawa* case is the seminal case from 1961, the Maryland Court of Appeals, that says medical bills, absent a showing of reasonableness, must be excluded, and evidence of the amount or payment of the medical bills does not establish the reasonable value of the services for which the bills were rendered or justify recovery therefrom." ECF 127 at 17.

Plaintiff attempts to distinguish his case from the *Kujawa* case, where a mother and son's testimony as to the son's medical expenses were insufficient to establish the reasonableness of the expenses. *See* ECF 131 at 6-8 (citing *Kujawa v. Baltimore Transit Co.*, 224 Md. 195, 167 A.2d 96 (1961)).[2] Plaintiff contends that he had proffered an expert witness, Dr. Garzillo, to testify to the reasonableness of the expenses charged for the treatment rendered. *Id.* at 6. However, the Court clarified at trial that it understood Plaintiff offered Dr. Garzillo as an expert as to future medical expenses only, and that he had not examined the Plaintiff. ECF 127 at 78-79. Plaintiff's

---

[2] Plaintiff's counsel essentially conceded to the exclusion at trial, when he stated, "you know I'm not from Maryland so I'm not familiar with those cases cited. If that's the law, that's the law." ECF 127 at 17.

11

counsel never offered any other basis for which she was proferring Dr. Garzillo as an expert. *Id.* Moreover, Dr. Garzillo's expert report was specifically limited to future medical expenses. *See* ECF 118-1. Accordingly, Plaintiff did not and cannot offer any basis for which Dr. Garzillo could have testified as to the reasonableness of Plaintiff's past medical expenses.

Plaintiff also argues that Defendant's objection to the admission of the past medical expenses was improper, because Defendant only objected to Dr. Garzillo's testimony as to future medical expenses. ECF 131 at 8. This argument is unavailing because Plaintiff never designated Dr. Garzillo as an expert on Plaintiff's past medical expenses. *See* ECF 127 at 78-79; ECF 118-1. Defendant's counsel properly objected to the past medical bills when they were raised at trial. *See* ECF 127 at 15 ("Mr. Blakeley: Your Honor, I have no objection to Exhibits 1 and 2. I do take issue with 3 which is past medical bills.").

### E. Jury Verdict Amount

Plaintiff argues that the jury's award of $3,000 was inadequate, because the jury was unable "to consider the evidence improperly withheld from it." ECF 131 at 1-2 (emphasis removed). In determining whether a jury's award is either excessive or inadequate, "a federal court in a diversity case must apply substantive state law." *Stebbins v. Clark*, 5 Fed. App'x 196, 201 (4th Cir. 2001). In Maryland, "the breadth of a trial judge's discretion to grant or deny a new trial is not fixed and immutable; rather, it will expand or contract depending on the nature of the factors being considered…." *Buck v. Cam's Broadloom Rugs, Inc.*, 328 Md. 51, 58-59, 612 A.2d 1294 (1992). Further, "it is not the function of an appellate court to second-guess a jury's award of damages so long as there is evidence in the record that supported the verdict." *Butkiewicz v. State*, 127 Md. App. 412, 425, 732 A.2d 994 (1999) (citing *Kirkpatrick v. Zimmerman*, 257 Md. 215, 262 A.2d 531 (1970)).

Here, the jury's award of $3,000 in non-economic damages was supported by the evidence in the record. As discussed above, Dr. Garzillo's testimony did not meet the requirements of Federal Rule of Evidence 702 and the *Daubert* standard. Accordingly, his testimony was properly excluded. In addition, evidence of Plaintiff's medical expenses was also properly excluded because Plaintiff was unable to lay the proper foundation to establish that the bills were fair and reasonable. Consequently, the jury's award of $3,000 for non-economic damages was not "against the weight of the evidence" or "based upon evidence which is false." *See Atlas Food Sys.*, 99 F.3d at 594. Plaintiff and his father testified as to Plaintiff's recovery after the accident and Plaintiff's ongoing pain. ECF 127 at 114-133, 138-189; ECF 128 at 24-82. With the past medical expenses properly excluded, and without a qualified expert to testify as to any future lost wages or expenses, the jury's award of $3,000 was consistent with the evidence presented.[3] *See Bugg v. Brown*, 251 Md. 99, 106, 246 A.2d 235 (1968) ("It is well settled that a pecuniary basis need not be established to make pain and suffering compensable and the jury's determination of the amount thereof will not ordinarily be disturbed."); *Rozinsky v. Assurance Co. of Am.*, Civil Action No. RDB-15-2408, 2017 WL 3383104, at *6 (D. Md. Aug. 7, 2017) ("It is well-established that calculating an award of non-economic damages for pain and suffering is within this Court's discretion as the finder of fact in this bench trial.").

### F. Bias/Prejudice

Plaintiff repeatedly attempts to portray this Court as biased and prejudiced in favor of Defendant. *See* 119-1 at 23 ("The above recitation of facts and occurrences is just one series of events where the Court demonstrated bias and prejudice in favor of Defendant to the detriment of Plaintiff in violation of Canon 3 of the Code of Conduct for United States Judges."); ECF 131 at

---

[3] In his closing argument, Defendant suggested awarding $4,000 to Plaintiff. ECF 128 at 113.

14 ("This is an example of only one ruling of many during the pretrial and trial of this matter that clearly indicates an improper bias demonstrated by the Magistrate in favor of Defendant/Defense counsel."). On the eve of trial, Plaintiff filed an Emergency Motion Withdrawing Consent to Vacate Referral to Magistrate and to Stay Proceedings to allow review by the United States District Judge, based on "bias and partiality in favor of Defendant." ECF 99. Judge Russell held a hearing and denied Plaintiff's Motion, finding "Plaintiff has failed to demonstrate 'good cause' or 'extraordinary circumstances' meriting relief." ECF 102; ECF 130 at 19.

In his Motion and Reply, Plaintiff raises the same arguments he raised at the emergency hearing, all of which were dismissed by Judge Russell. Plaintiff's claims of bias and prejudice are based on the Court's "[c]ritical focus and assesment … of Plaintiff's named expert witness" at the Pretrial Conference, and the Court's "allow[ing] Defense counsel to proceed with his late attack against Plaintiff's expert witness, Dr. Garzillo, using the Magistrate's formulated basis of the *Daubert* standard." ECF 119-1 at 23; ECF 131 at 14. Judge Russell found "no evidence which would support" Plaintiff's Motion. ECF 130 at 20. Importantly, Judge Russell also found "that the defendant did preserve through a Motion in Limine filed prior to the pretrial conference, a challenge to the qualifications of the individual plaintiff's expert." *Id.* at 19-20. Accordingly, Plaintiff's arguments of bias and prejudice are unavailing.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for a New Trial, ECF 119, is denied. A separate Order follows.

Dated: August 11, 2020                                     /s/
                                                                   Stephanie A. Gallagher
                                                                   United States District Judge

14